# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

James Vincent Banks,

     Plaintiff

v.

Joseph Lombardo, et al.,

     Defendants

Case No.: 2:20-cv-00556-APG-NJK

**Screening Order**

Plaintiff James Vincent Banks, who is a pretrial detainee in custody of the Clark County Detention Center (CCDC), has submitted a civil rights complaint under 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*. ECF Nos. 1-1, 4. I grant the application to proceed *in forma pauperis* (ECF No. 4) and screen Banks's civil rights complaint.

## I. IN FORMA PAUPERIS APPLICATION

Based on the information regarding Banks's financial status in his application to proceed *in forma pauperis*, Banks is not able to pay an initial installment payment toward the full filing fee under 28 U.S.C. § 1915. Banks will, however, be required to make monthly payments toward the full $350.00 filing fee when he has funds available.

## II. SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.*

§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999 In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to

less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

III.     SCREENING OF COMPLAINT

Banks sues multiple defendants for events that took place while he was incarcerated at the CCDC and the Nevada Department of Corrections (NDOC). ECF No. 1-1 at 1. He sues

Sheriff Joseph Lombardo, Sgt. Holm (P#10108), Sgt. Risppo, Lt. Tromba (P#4840), Lt. Zavsa, (P#6673), Dr. James Williamson, Naphcare Inc., NDOC Director James Dzurenda, Warden Brian E. Williams, Dr. Alley, Warden Filson, Warden Isidro Baca, and Does. *Id.* at 1-3. He asserts 2500 counts[1] and seeks monetary damages. *Id.* at 25, 28.

## A. Count 1

In Count 1, Banks alleges the following: On March 15, 16, and 17, 2018, jail officials removed Banks from general housing for allegedly disrupting the module. ECF No. 1-1 at 4. After Holm and Thompson put Banks in restraints, Holm, Risppo, Thompson, Byars, Heiss, and Miller escorted Banks to disciplinary segregation. At 4:08 p.m., Holm, Byars, Risppo, Heiss, and Miller escorted Banks up the stairs and then permitted Thompson to rush Banks up against the wall on the top tier. Holm and Risppo held Banks's left arm on the left side while Heiss, Byars, and Miller yelled at Banks to face the wall while aggressively and excessively bending Banks's wrist while in restraints. Banks complied while they forced his face three or four inches away from the wall.

Ten seconds later, Thompson, Heiss, Byars, Miller, Holm, Risppo, and Thompson slammed Banks's forehead into the wall with such brutal force that Banks immediately had blurred vision, loud throbbing and ringing in his ears, headaches, numbness, and tingling in his legs. Thompson rushed Banks to the ground and issued a knee drop to the top right side of Banks's head. While Banks was in pain, Thompson jerked, pulled, dragged, and attempted to stand Banks upright. When Thompson attempted another assault, Holm responded, "stop, he's had enough! Just get him to the cell." Banks now suffers from excessive headaches, loud

---

[1] After Count 9, Banks groups his counts together as Counts 10-150, 151-250, 251-500, 500-1500, and 1501-2500. ECF No. 1-1 at 16, 19-20, 25.

ringing in his ears, and leg numbness. In May 2011, Banks had successful Lasik surgery, but after the beating his eyesight declined. Banks now wears prescription glasses and has light sensitivity, burning and inflammation in both eyes, redness, and blurred vision..

Banks alleges First, Fifth, Sixth, Eighth, and Fourteenth Amendment violations. *Id.* at 4. I interpret the allegations in this count as a claim for Fourteenth Amendment due process excessive force violations. I dismiss all other claims in this count without prejudice.

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that a pretrial detainee states a claim for excessive force under the Fourteenth Amendment if: (1) the defendant's use of force was used purposely or knowingly, and (2) the force purposely or knowingly used against the pretrial detainee was objectively unreasonable. *Id.* at 396-97.

Banks states a colorable excessive force claim. Based on the allegations, the officers knowingly used force while Banks was restrained and compliant. This is sufficient to state a colorable Fourteenth Amendment excessive force claim on screening and the claim will proceed against Holm, Risppo, Thompson, Byars, Heiss, and Miller.

**B.     Counts 2, 3, 4, and 5**

In Count 2, Banks alleges the following:  Thompson, Heiss, Holm, Miller, Byars, and Risppo strip searched Banks. ECF No. 1-1 at 6. Thompson deployed his taser gun while standing behind Heiss, pointed the taser at Banks, and made sexual jokes toward Banks. Thompson commented, "damn, he's got a nice ass" while Banks bent over and spread his buttocks. Risppo made all the officers laugh after commenting, "yea, he does have a nice ass, I would sure love to hit that ass." Thompson aggressively pointed his taser gun at Banks and threatened that, if Banks ever told anybody that the officers had commented on Banks's "nice ass or about how we just fucked you up outside the cell, we will put your fucking ass in

administrative segregation, our max custody unit." As the officers left, Banks asked for medical assistance and stated that he needed to go to the hospital. Holm responded, "No, you're not going to the hospital, so you can try and sue us for damages?" After Holm left, Banks continuously pressed the emergency duress button asking for help, but someone turned the duress button off.

When Heiss, Miller, and Thompson made their rounds, Banks asked to see a nurse or a doctor and to go to the hospital. Thompson responded, "jail policy prohibits you from leaving your cell until after 24 hours when you first come to the hole." Thompson also stated, "we are not letting you leave the cell so you can try and call someone to sue us." When Banks asked for a medical kite, Heiss, Miller, and Thompson told Banks to get one on his free time. When Doe nurses made their rounds, Banks tried to ask them for medical assistance, but Heiss, Thompson, and Miller told the nurses not to assist Banks and not to give Banks any medical kites.

On March 17, 2018, between 10 a.m. and 11 a.m., Thompson went to Banks's cell to apologize. Thompson said, "sorry Banks, I've never seen any inmate respond in pain like that when we used such brutal force like that." When Banks asked Thompson why the officers used force like that, Thompson stated, "it wasn't my call, it wasn't me, you gotta ask Sergeant Holm . . . is everything cool with us?" During each shift, Banks would ask Thompson, Heiss, Miller, Byars,[2] Lingle, Keele, and White for medical request forms and to go to the hospital to see a doctor, but they refused. Banks asked these officers every day from March 15, 2018 through March 27, 2018.

---

[2] In the complaint, Banks references officers named "Byars," "Bryan," and "Bryars." *See* ECF No. 1-1 at 6-7, 9. I interpret these individuals to be the same officer whose name Banks spells inconsistently.

In Count 3, Banks alleges the following: On March 21, 2018, Holm and Byars escorted Banks to medical and informed him that Nurse Daryl and Dr. Williamson from Naphcare wanted to see Banks. Banks overheard Holm telling Dr. Williamson to do Holm's "a favor and not authorize [Banks] to go to the hospital so we don't get sued." Holm told Dr. Williamson, "we banged him up real bad too." Banks explained to Nurse Daryl what was wrong with his head.

When Nurse Daryl asked Banks about his medical history, Banks refused to provide that information in front of Holm because it was privileged. Holm responded, "oh so you want to be an asshole and play pro se attorney again, after this I'm placing your ass in max housing to restrict your court ordered law library access and phone so you can't sue us." Holm walked away. When Holm returned, he asked Banks if this was "everything you can remember into what happened about the incident?" When Banks responded it was all that he could remember for now, Holm asked why Banks had not asked for medical assistance after they slammed Banks's forehead into the wall. When Banks told Holm that he had asked and that Holm had told Banks he was going to make sure Banks did not get medical assistance and had directed the officers not to give Banks a medical kite, Holm got angry and stated, "whatever asshole" and "by the way I looked and rolled back the surveillance video and that was 4:08 p.m. when it shows us escorting you up the stairs and then fucking you up." Holm told Banks that he did not care about Banks's religious rights and had removed Banks from the kosher meal list.

Nurse Daryl observed that Banks's eyes were still dilated and said he would pass this information onto Dr. Williamson. Nurse Daryl informed Banks that Dr. Williamson had to approve any hospital visit.

In Count 4, Banks alleges the following: On March 22, 2018, between 9:00 p.m. and 9:30 p.m., Nurse Jennell examined Banks. *Id.* at 11. Jennell examined Banks's eyes, determined that

a CT scan and MRI were needed, and thought that Dr. Williamson would order both types of imaging for Banks's head. Nurse Jennell commented that Banks needed to go to the hospital but noted that the decision was up to the doctor.

Later that night, between 10:00 p.m. and 10:30 p.m., Lt. Tromba went to Banks's cell and notified Banks that he had looked at the surveillance video of the officers using unlawful force against Banks. After Banks explained to Tromba what had happened, Tromba confirmed those events in the surveillance video. Tromba told Banks that he would generate a citizen's report to the CBB and another citizen's report to internal affairs. On March 23, 2018, Lt. Flippo confirmed that a citizen's review contact report had been generated. Tromba never followed up with Banks.

In Count 5, Banks alleges the following: On March 28, 2018, Banks met with Dr. Williamson while Miller, Thompson, and Holm were present. *Id.* at 12. Banks explained that he had mild headaches, loud ringing in his ears, head throbbing, blurred vision, throbbing eye pains, numbness and weakness in his legs, a loss of balance, a sore neck, and visions of bright spots due to the officers slamming Banks's head against a wall and knee dropping on his head.

Holm told Dr. Williamson "not to authorize Banks going to the hospital for MRI and CT-scan because we don't want to get sued." Dr. Williamson argued that Banks had to go to the hospital and Dr. Williamson and Holm argued back and forth about policy. When they stopped talking, Dr. Williamson finished examining Banks. When Banks asked to go the hospital, Dr. Williamson told Banks to "talk to your attorney, talk to your attorney in federal district court." Banks thought Dr. Williamson was talking about a federal civil action. Williamson ordered Tylenol for Banks's pain.

In Count 2, Banks alleges violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. *Id.* at 6. In Count 3, Banks alleges violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments for deliberate indifference to serious medical needs, excessive force, cruel and unusual punishment, medical malpractice, and police retaliation. *Id.* at 9. In Count 4, Banks alleges First, Fifth, Eighth, and Fourteenth Amendment violations. *Id.* at 11. In Count 5, Banks alleges Fifth, Eighth, and Fourteenth Amendment violations. *Id.* at 12.

As an initial matter, I dismiss Banks's Fifth Amendment claims in Counts 2, 3, 4, and 5, with prejudice as amendment would be futile. The Fifth Amendment does not apply in this case because Banks is not suing federal government employees. *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (holding that "[t]he Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."). I also dismiss the Eighth Amendment claims with prejudice as amendment would be futile because Banks was a pretrial detainee rather than a convicted inmate at the time of these allegations. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (holding that the Eighth Amendment's bar against cruel and unusual punishment applies to convicted prisoners while pretrial detainees are protected by the Fourteenth Amendment's Due Process Clause). I also dismiss Banks's Sixth Amendment claims without prejudice because there are no allegations in these counts that would support a Sixth Amendment violation. Additionally, to the extent that Banks might be attempting to raise a claim for verbal sexual harassment, I dismiss that claim with prejudice as amendment would be futile. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (holding that verbal harassment or abuse is insufficient to state a constitutional deprivation under 42 U.S.C. § 1983).

With respect to the First and Fourteenth Amendments, I interpret Banks's allegations as bringing claims for First Amendment retaliation, Fourteenth Amendment due process-inadequate medical care, and Fourteenth Amendment due process-administrative grievance process violations. I will address Banks's First Amendment retaliation claim under Count 7, *infra*, Part III.D. With respect to any other claims Banks is attempting to raise in Counts 2, 3, 4, and 5, I dismiss them without prejudice.

### 1. Inadequate Medical Care

Pretrial detainees may raise inadequate medical care claims under the Fourteenth Amendment's Due Process Clause. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). I evaluate these claims under an objective deliberate indifference standard. *Id.* at 1125. The elements of a pretrial detainee's Fourteenth Amendment inadequate medical care claim are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* The third element requires the defendant's conduct to be "objectively unreasonable," a test that turns on the facts and circumstances of each particular case. *Id.* A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

Banks states a colorable Fourteenth Amendment due process-inadequate medical care claim. Based on the allegations, Thompson, Heiss, Holm, Miller, Byars, and Risppo caused Banks's injuries and then repeatedly refused to permit him to seek medical assistance and

discouraged medical officials from treating Banks. Moreover, based on the allegations, Dr. Williamson, who had the authority to send Banks to a hospital, knew that Banks needed to go to a hospital for further treatment but declined to authorize medical treatment for Banks. This claim will proceed against Thompson, Heiss, Holm, Miller, Byars, Risppo, and Dr. Williamson.

### 2. Due Process & Administrative Grievance

To the extent that Banks is suing Lt. Tromba for failing to follow up with Tromba's citizen's board reports and internal affairs' reports, Banks fails to state a colorable claim. Inmates have no stand-alone due process rights related to the administrative grievance process. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest in the processing of appeals because there is no liberty interest entitling inmates to a specific grievance process). I dismiss this claim with prejudice as amendment would be futile.

### C. Count 6

In Count 6, Banks alleges the following: Lombardo, Chief John Does, Captain Teel, and Captain Smith made Banks a "suspect class" from other "similarly situated" inmates at CCDC when they gave John Doe inmate access to medical treatment at the hospital after Doe inmate fought with Banks on January 8, 2018. ECF No. 1-1 at 13. After John Doe inmate acquired a deep forehead laceration after his fight with Banks, Naphcare staff and Dr. Williamson sent Doe inmate to the hospital for an MRI and CT scan for his head injury. However, Does and Naphcare discriminated against Banks because Banks was black and Doe inmate was of Mexican descent.

Banks alleges First, Fifth, Eighth, and Fourteenth Amendment violations.  I interpret Count 6 as a claim for Fourteenth Amendment equal protection violations.  To the extent that Banks is attempting to raise any other claims in this count, I dismiss them without prejudice.

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Banks states a colorable equal protection claim based on Dr. Williamson treating Banks differently from other similarly situated inmates with head injuries.  Based on the allegations, Dr. Williamson has sent inmates with head injuries to the hospital for MRIs and CT scans.  But when Banks sustained a head injury, Dr. Williamson refused to send him to the hospital even after recognizing that he needed to go.

Banks fails to state a colorable equal protection claim based on race.  Although Banks is black and the other inmate was of Mexican descent, Banks has not provided any allegations that Dr. Williamson treated Banks differently because of his race.

I also dismiss Lombardo, Chief John Does, Captain Teel, and Captain Smith from this claim without prejudice.  There are no allegations that any of these defendants knew that Banks had suffered a head injury and needed to go to the hospital. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of

his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983").

Banks also fails to state a colorable claim against Naphcare. "For purposes of claims brought under § 1983, a private entity like Naphcare is treated as a municipality" and is subject to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Denson v. Gillespie*, No. 2:10-CV-00525-APG, 2015 WL 56037, at *2 (D. Nev. Jan. 5, 2015); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (holding that "the requirements of *Monell* do apply to suits against private entities under § 1983"). To make out a claim against a private entity under *Monell*, a plaintiff must show that (1) the private entity acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of the private entity. *Tsao*, 698 F.3d at 1139. I dismiss this claim without prejudice against Naphcare.

**D.    Count 7**

In Count 7, Banks alleges the following: On March 29, 2018, Holm, Lombardo, and Doe jail officials retaliated against Banks by putting him in administrative segregation after he used the grievance process and medical request forms to report the actions of Thompson, Heiss, Byars, Risppo, Holm, and Miller. ECF No. 1-1 at 14.

Banks alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments. I interpret the allegations in this claim as a First Amendment retaliation claim and dismiss all other claims from this count without prejudice.

Inmates have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those

bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id.* at 568-69.

Banks states a colorable retaliation claim against Holm. Based on the allegations, after Banks was able to finally speak to someone in medical about the excessive force allegations, Holm took away Banks's religious kosher meals and put Banks in administrative segregation. This is sufficient to state a colorable claim on screening and will proceed against Holm. I dismiss the claim against Lombardo and Doe jail officials because there are no allegations to support a retaliation claim against them.

### E.    Count 8

In Count 8, Banks alleges the following: Lombardo was in charge of jail policies. ECF No. 1-1 at 14. Lombardo delegated some of his policy-making authority to his police chief, captains, and lieutenants. The officers were supposed to abide by the jail policies and not use force that was overly excessive. Officers engaged in unauthorized force when they used force

outside of the policy. Banks alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments.

"A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. . . . Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

I dismiss this count without prejudice against Lombardo. Banks has not made any allegations that Lombardo implemented any deficient policy that caused the officers to engage in excessive force.

### F.    Counts 1501-2500

In Counts 1501-2500, Banks alleges the following: Dr. Williamson was deliberately indifferent to Banks's serious medical needs from August 19, 2016 through April 12, 2018 while Banks was a pretrial detainee. ECF No. 1-1 at 25. During that time, Banks complained of "pain and suffering to his hernia in the left-pelvic area" and requested hernia surgery to have it fixed. Dr. Williamson and his staff repeatedly denied the surgery because they considered the surgery "elective." Banks alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments.

I interpret the allegations in these counts as one claim for Fourteenth Amendment due process violations for inadequate medical care. *See* Part III.B.1. *supra*, for a discussion of the Fourteenth Amendment legal standard for inadequate medical care claims. I will permit this claim to proceed past screening. I liberally construe the allegations as stating that Dr. Williamson acknowledged that Banks had a hernia issue in his left-pelvic area but refused to

provide treatment because Dr. Williamson felt the surgery was elective.  This claim will proceed against Dr. Williamson.

### G.    Counts 9, 10-150, 151-250, 251-500, and 500-1500

In Count 9, Banks alleges the following: On April 12, 2018, Banks entered NDOC custody at High Desert State Prison (HDSP). ECF No. 1-1 at 15.  During intake, Banks complained about continuous headaches, sharp pains and throbbing throughout his head, loud ringing and throbbing of his ears, blurred vision, numbness of his legs, bunions and hammertoes on both feet, aches in both feet, poor tissue support in the metatarsals on the bottom of his feet, and inflammation in his feet.  John Doe officers and Jane Doe nurses told Banks they would call Dr. G. Bryan to authorize Banks's medical shoes from the jail.  An hour later, Dr. Bryan examined Banks's feet and approved Banks's medical shoes from the CCDC.

Banks told Dr. Bryan about a hernia that CCDC officials had refused to treat.  Banks also told Dr. Bryan about the March 15, 2018 beating and explained that he never had any pain or trauma symptoms prior to that date.  Dr. Bryan told Banks that he would schedule an appointment to see Banks after evaluating and examining Banks's pelvic hernia and would also evaluate Banks's head trauma.  Dr. Bryan told Banks that he would order pain medication for Banks until he could examine all of Banks's issues.

In Counts 10-150, Banks alleges the following: From April 13, 2018 through May 12, 2018, Banks was housed in HDSP's fish tank and met with Nurse Kim and Jane Doe nurse practitioner. *Id.* at 16.  Banks told these two about the assault at CCDC and that he was suffering from headaches, loud ringing of the ears, blurred vision, bright spots, sharp throbbing pain in his head and neck, and numbness and weakness in his legs.  When Jane Doe asked for Banks's previous medical history, Banks reported the hernia in his left-pelvic area, the bunion and

hammertoe on his right foot, a redeveloping bunion on his left foot, the poor tissue support on the metatarsal heads on the bottom of his feet, and high blood pressure.

Banks asked about the pain medication that Dr. Bryan had ordered. Jane Doe checked the I-file and told Banks that, although she saw an order for pain and blood pressure medication, none of the nurses had ordered the medication. Jane Doe told Banks that he would see Dr. Bryan about the hernia, foot evaluation, and head trauma.

On May 30, 2018, Banks finally saw Dr. Bryan. Dr. Bryan evaluated Banks's hernia and foot problems and approved a referral to the medical utilization review board for left-pelvic hernia surgery and orthopedic medical shoes and inserts for Banks's foot problems.

When Banks complained about his brain injury symptoms and asked to be referred to a neurologist for an MRI and CT scan, Dr. Bryan told Banks that he would do a referral after the medical review board approved Banks's hernia repair and orthopedic shoes and foot inserts. Dr. Bryan stated that he would leave a medical referral note in Banks's I-file. Dr. Bryan noted that Banks's request for the MRI and CT scan would likely get denied if Dr. Bryan submitted too many requests to the medical utilization review board because they were waiting for a new fiscal year budget on July 1. When Banks told Dr. Bryan that he had not received any pain medication for his head trauma or hernia pain, Dr. Bryan ordered the medication for Banks.

Banks also explained to Dr. Bryan that his vision had declined. *Id.* at 19. Dr. Bryan told Banks that he would put Banks on the eye doctor's appointment list. It took 19 months for Banks to get prescription glasses.

In Counts 151-250, Banks alleges the following: On June 20, 2018, prison officials transferred Banks to Ely State Prison (ESP). During intake, Banks explained to nurses Jane and John Does about his ongoing post-traumatic brain injury symptoms related to the CCDC assault.

Jane Doe nurse told Banks that he would see a "doctor" shortly. Banks complained to Nurse Stark and Nurse Practitioner Gary about his brain injury symptoms and requested to see a doctor for an MRI and CT scan. Gary told Banks that the prison did not have a doctor but would order an MRI and CT scan for Banks. However, nothing happened. In response to Banks's medical kites, Stark and Gary responded that Banks's neck and spine x-rays from the CCDC looked normal.

At the end of July 2018, Stark and Gary informed Banks that the medical utilization review board approved Banks for hernia surgery. On August 8, 2018, Banks returned to HDSP for hernia surgery. No doctor ever ordered an MRI or CT scan to evaluate Banks's head trauma. Filson, Reubart, and Gittere had a duty to ensure that there was a medical doctor available to evaluate Banks's traumatic brain injury from the jail.

In Counts 251-500, Banks alleges the following: From April 12, 2018 through January 9, 2020, Banks sent numerous medical kites to staff seeking treatment for his throbbing headaches, blurred vision, loud ringing and throbbing ear pain, seeing bright spots, neck and back spasms, weakness in his legs, and declining vision. *Id.* at 21.

Between September and October 2018, Banks saw Dr. Peter Caravella for hernia issues and he approved and recommended immediate surgery for Banks. On October 17, 2018, Banks saw Dr. Augustine after Banks called a man down due to chest pains and head trauma. Dr. Augustine told Banks that he had scheduled Banks an emergency sick call with Dr. Bryan regarding Banks's brain injury symptoms. However, Dr. Bryan never saw Banks for a head trauma evaluation. When Banks sent follow up medical kites to the nurses to remind Dr. Bryan that Dr. Bryan was going to submit a referral to the medical utilization review board to recommend an MRI and CT scan for Banks, Banks never received a response. Banks initiated

the grievance process but was remanded back to the CCDC for a new criminal trial on January 9, 2020 before he could complete the grievance process.

On December 6, 2018, Banks had a successful hernia repair surgery on his left pelvic area. When Banks complained about complications a few days later, prison officials took him back to the hospital. When Banks told the doctor at the hospital about his brain injury symptoms, the doctor explained that his services were limited to the hernia surgery. The doctor told Banks to talk to Warden Williams.

In Counts 500-1500, Banks alleges the following: Between March 2019 and April 2019, prison officials transferred Banks to the Northern Nevada Correctional Center (NNCC) to see the orthopedic foot specialist, Rod Miller. Miller determined that Banks needed orthopedic medical shoes and inserts and made a referral to the medical utilization review board. The board approved the recommendation and Banks received his orthopedic shoes and inserts.

Banks sent several kites to NNCC medical about his brain injury symptoms. Banks saw Dr. Alley who made a referral to the medical utilization review board recommending that Banks see a neurologist and have an MRI. On May 8, 2019, Dr. Alley told Banks that the medical board approved Banks to see a neurologist but noted that there was a long waitlist, and it could take a few weeks or months. Prison officials did not respond when Banks complained of head pain and the pain medication not working.

In Count 9, Banks does not specify any alleged constitutional violations. *Id.* at 15-16. In Counts 10-150, 151-250, 251-500, and 500-1500, Banks alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments. *Id.* at 17, 19-20, 23. In these counts, I interpret Banks's allegations as alleging claims for Eighth Amendment deliberate indifference to serious medical needs based on brain injury symptoms, eye issues, hernia issues, and feet issues. I dismiss the

Fifth Amendment claim with prejudice as amendment would be futile because Banks is not suing

federal government employees. To the extent Banks is trying to raise any other claims, I dismiss

those claims without prejudice.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and

"embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and

decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth

Amendment when he acts with "deliberate indifference" to the serious medical needs of an

inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment

violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious

enough to constitute cruel and unusual punishment—and a subjective standard—deliberate

indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by

demonstrating that failure to treat a prisoner's condition could result in further significant injury

or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must

show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and

(b) harm caused by the indifference." *Id*. "Indifference may appear when prison officials deny,

delay or intentionally interfere with medical treatment, or it may be shown by the way in which

prison physicians provide medical care." *Id*. (internal quotations omitted). When a prisoner

alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show

that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d

404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to

state a claim of deliberate medical indifference").

As an initial matter, Banks fails to allege claims for deliberate indifference to serious medical needs with respect to his hernia and feet issues. Based on the allegations, prison officials worked toward getting him hernia surgery and orthopedic shoes and inserts. Although the time it took to get the treatment he needed may not have been as fast as he would have preferred, the allegations demonstrate that prison officials did not fail to respond to his medical needs. Banks also fails to allege a colorable claim for deliberate indifference to serious medical needs with respect to his prescription eyeglasses. Although it appears to have taken Banks 19 months to acquire glasses, Banks has not provided any allegations to demonstrate that defendants purposefully failed to treat him or the harm caused by any delay. I dismiss these claims without prejudice.

With respect to Banks's brain injury symptoms, Banks states a colorable claim for deliberate indifference to serious medical needs. Based on the allegations, Banks complained about his brain injury symptoms from intake on April 12, 2018 until he returned to the CCDC on January 9, 2020. I will permit this claim to proceed against Dr. Bryan because Banks repeatedly informed Dr. Bryan about his brain injury symptoms and alleges that Dr. Bryan chose to delay a referral for treatment but then never followed up with a referral even after receiving several medical kites on the topic. I dismiss the claim against Dr. Alley without prejudice because Dr. Alley acted to get Banks approved to see a neurologist and does not appear to have had any authority over scheduling.

To the extent Banks seeks to sue other individuals at the prison for deliberate indifference to serious medical needs, I dismiss them without prejudice. The other medical staff identified in the complaint do not appear to have had the authority to issue Banks a referral to a neurologist for an MRI or CT scan. Additionally, I dismiss Filson, Reubart, Gittere, and Williams from

these counts without prejudice because there are no allegations that these defendants knew about Banks's medical issues. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983").

### H.    Remaining Defendants

I dismiss Dzurenda, Baca, and Zavsa without prejudice from this case because there are no allegations in the complaint against them.

## IV.   CONCLUSION

I therefore order that Banks's application to proceed *in forma pauperis* (ECF No. 4) without having to prepay the full filing fee is **granted**. Banks will **not** be required to pay an initial installment fee. Nevertheless, the full filing fee will still be due. *See* 28 U.S.C. § 1915, as amended by the PLRA. Banks is permitted to maintain this action to conclusion without the necessity of prepayment of fees or costs or the giving of security. This order granting *in forma pauperis* status will not extend to the issuance or service of subpoenas at government expense.

I further order that, under 28 U.S.C. § 1915 as amended by the PLRA, the Clark County Detention Center will forward payments from the account of **James Vincent Banks, #1793906** to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action. If Banks should be transferred and become under the care of the Nevada Department of Corrections, the CCDC Accounting Supervisor is directed to send a copy of this order to the attention of the Chief of Inmate Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV 89702, indicating the amount that Banks has paid

toward his filing fee, so that funds may continue to be deducted from Banks's account. The Clerk shall send a copy of this order to the Finance Division of the Clerk's Office. The Clerk will send a copy of this order to the **CCDC Accounting Supervisor, 330 S. Casino Center Blvd., Las Vegas, NV 89101.**

I further order that even if this action is dismissed or is otherwise unsuccessful, the full filing fee will still be due under 28 U.S.C. §1915, as amended by the PLRA.

I further order the Clerk of the Court to file the complaint (ECF No. 1-1) and send Banks a courtesy copy.

I further order the Clerk of the Court to add Thompson, Byars (P#15200), Heiss, Miller (P#15192), Reubart, Gittere, and Dr. G. Bryan to the docket sheet as defendants in this case.

I further order that Count 1, alleging Fourteenth Amendment excessive force violations, will proceed against Holm, Risppo, Thompson, Byars, Heiss, and Miller.

I further order that the portions of Counts 2, 3, 4, and 5 alleging Fifth and Eighth Amendment violations are dismissed with prejudice as amendment would be futile. The portion of those counts alleging Sixth Amendment violations are dismissed without prejudice. The portion of those counts alleging Fourteenth Amendment due process-inadequate medical care will proceed against Thompson, Heiss, Holm, Miller, Byars, Risppo, and Dr. Williamson. The portion of the counts alleging Fourteenth Amendment due process-administrative grievance process violations is dismissed with prejudice as amendment would be futile.

I further order that Count 6, alleging Fourteenth Amendment equal protection violations, will proceed against Dr. Williamson.

I further order that Count 7, alleging First Amendment retaliation, will proceed against Holm.

I further order that Count 8, alleging supervisory liability, is dismissed without prejudice.

I further order that Counts 9, 10-150, 151-250, 251-500, and 500-1500, alleging Eighth Amendment deliberate indifference to serious medical needs, will proceed against Dr. Bryan as to Banks's brain injury symptoms only.

I further order that Counts 1501-2500, alleging Fourteenth Amendment due process-inadequate medical care, will proceed against Dr. Williamson.

I further order that defendants Lombardo, Tromba, Naphcare, Dr. Alley, Dzurenda, Baca, Zavsa, Filson, Reubart, Gittere, and Williams are dismissed from the complaint without prejudice.

I further order that as to **defendants Thompson, Heiss, Holm, Miller, Byars, Risppo, and Dr. Williamson**:

1.  The Clerk of Court **will issue** summonses for **Thompson, Heiss, Sgt. Holm (P#10108), Miller (P#15192), Byars (P#15200), Sgt. Risppo, and Dr. Williamson**, **and deliver the same**, to the U.S. Marshal for service. The Clerk also **will send** sufficient copies of the complaint (ECF No. 1-1) and this order to the U.S. Marshal for service on the defendants).

2.  The Clerk **will send** to Banks **seven** USM-285 forms. Banks will have **30 days** within which to furnish to the U.S. Marshal the required USM-285 forms with relevant information as to each defendant on each form.

3.  Within **20 days** after receiving from the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished, Banks must file a notice with the Court identifying which defendants were served and which were not served, if any. If Banks wishes to have service again attempted on an unserved

defendant, then a motion must be filed with the court identifying the unserved

defendant and specifying a more detailed name and address for that defendant, or

whether some other manner of service should be attempted.

I further order that as to **defendant Dr. G. Bryan**:

1.    The Clerk of the Court shall electronically **SERVE** a copy of this order and a
      copy of Banks's complaint (ECF No. 1-1) on the Office of the Attorney General
      of the State of Nevada by adding the Attorney General of the State of Nevada to
      the docket sheet.  This does not indicate acceptance of service.

2.    Service must be perfected within 90 days from the date of this order pursuant to
      Fed. R. Civ. P. 4(m).

3.    Subject to the findings of this screening order, within 21 days of the date of entry
      of this order, the Attorney General's Office shall file a notice advising the court
      and Banks of: (a) the names of the defendants for whom it accepts service; (b) the
      names of the defendants for whom it does not accept service, and (c) the names of
      the defendants for whom it is filing the last-known-address information under
      seal.  As to any of the named defendants for whom the Attorney General's Office
      cannot accept service, the Office shall file, under seal, but shall not serve the
      inmate Banks the last known addresses of each such defendant for whom it has
      such information.  If the last known address of the defendant is a post office box,
      the Attorney General's Office shall attempt to obtain and provide the last known
      physical address.

4.    If service cannot be accepted for any of the named defendants, Banks shall file a
      motion identifying the unserved defendants, requesting issuance of a summons,

and specifying a full name and address for the defendants.  For the defendants as to which the Attorney General has not provided last-known-address information, Banks shall provide the full name and address for the defendants.

5. If the Attorney General accepts service of process for any named defendant, such defendant shall file and serve an answer or other response to the complaint (ECF No. 1-1) within 60 days from the date of this order.

6. This case will not be referred to the Inmate Early Mediation Program.

I further order that Banks shall serve upon the defendants or, if an appearance has been entered by counsel, upon their attorney, a copy of every pleading, motion or other document submitted for consideration by the Court.  If Banks electronically files a document with the court's electronic-filing system, no certificate of service is required. Fed. R. Civ. P. 5(d)(1)(B); Nev. Loc. R. IC 4-1(b); Nev. Loc. R. 5-1.  However, if Banks mails the document to the court, he shall include with the original document submitted for filing a certificate stating the date that a true copy of the document was mailed to the defendants or counsel for the defendants.  If counsel has entered a notice of appearance, Banks shall direct service to the individual attorney named in the notice of appearance at the physical or electronic address stated therein.  The court may disregard any document received by a district judge or magistrate judge which has not been filed with the Clerk, and any document received by a district judge, magistrate judge, or the Clerk which fails to include a certificate showing proper service when required.

Dated: May 13, 2021

_____
U.S. District Judge